Filed 5/19/16  In re S.U. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re S.U. et al., Persons Coming Under the Juvenile Court Law. | C080798 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.R.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD234519, JD234520, JD234521) |

T.R., mother of the minors, appeals from orders of the juvenile court denying her petitions for modification and terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 388, 395 [further undesignated statutory references are to the Welfare and Institutions Code].)  Mother contends the juvenile court erred in denying her petitions for modification without a hearing and further erred in failing to find she had established the beneficial parental relationship exception to the preference for adoption as a permanent plan.  We affirm.

1

**FACTS**

In March 2014, as a result of a police raid, the Sacramento County Department of Health and Human Services (Department) filed petitions alleging two-month-old twins S.U. and Y.U. and three-year-old A.U. were at risk of physical harm due to parental drug possession and use and the filthy, unsafe condition of the home. Mother admitted she and father used drugs when the minors were not present but said she had nothing to do with the drugs and guns found in the home. The minors were detained in April 2014.

The jurisdiction/disposition report stated both parents tested positive for drugs. During the first week in placement A.U. was dealing with the trauma of the raid and subsequent removal by acting out the police raid in play. This behavior decreased over time. A.U. disclosed that father beat mother. A.U. also showed some learning delays due to lack of exposure to concepts and problem solving. In May 2014 the court sustained the petitions and ordered reunification services for the parents. In August 2014 the juvenile court authorized placement with the paternal great-great-aunt.

The six-month review report filed in November 2014 recommended further services for mother. Mother had no visits from April 2014 to October 2014 because she was in custody. Thereafter, mother had twice-weekly supervised visitation. Because father had been in custody since April 2014 and had not participated in services, the report recommended termination of his services. The minors continued to do well in their relative placement. The juvenile court terminated father's reunification services and ordered additional services for mother.

The 12-month review report, filed in April 2015, recommended termination of mother's services. Mother tested positive for cocaine in March 2015 and returned to treatment but failed to complete the drug treatment portion of her case plan. Mother visited the minors sporadically but spent her time sleeping or texting friends rather than interacting with the minors. A.U., who was in therapy to deal with trauma suffered prior

to removal, regressed after visits with mother, particularly if she did not set limits during visits.

After a contested review hearing, the juvenile court terminated mother's services in June 2015 and set a section 366.26 hearing. In terminating services, the court noted that criminality and drugs were key issues in the risks to the minors. As a result, drug treatment and drug court were a part of mother's plan because of clear indications of polysubstance abuse. Mother was not initially eligible for drug court because she was in custody; however, in November 2014, after her release, she moved for inclusion in the program. Mother failed to appear at the hearing and the motion was denied. Mother reapplied in February 2015 and in March 2015 was admitted to drug court but was again dismissed in late March for failure to participate. The juvenile court observed that mother's testimony about her relapse showed she continued to blame others and make excuses. Further, mother claimed to have attended 12-step meetings but was unable to name any of the steps and showed no insight into her addiction. The juvenile court also stated that mother said she participated in domestic violence counseling and benefitted from it, but her behavior demonstrated that she had not. Mother attended services but, according to the juvenile court, was "full of excuses" and lacked insight regarding her choices and actions. The court found mother participated in the plan but had not successfully completed it.

In September 2015 mother filed petitions to modify the order terminating services, seeking an order for additional services. The petitions did not explicitly request the court to vacate the section 366.26 hearing. Mother alleged she had enrolled in a residential job training program, had a new support system, and had enrolled in a substance abuse treatment program with individual and group counseling and was attending 12-step meetings. Further, she alleged the modifications were in the minors' best interests because she was regularly visiting them, actively participating in visits, and increasing her bond with them. Attached documentation showed mother had enrolled in the

3

program and included test results as well as certificates of completion of several elements of the program.

The court denied the petitions without a hearing, finding the "request does not state new evidence or a change of circumstances" and did "not promote the best interest" of the minors. Additionally, relying on section 366.21, subdivision (h), the juvenile court denied the request because "the law does not allow for the provision of reunification services to a parent when a [section] 366.26 hearing is pending."

The assessment for the section 366.26 hearing stated mother had twice-weekly supervised visits. The visits were appropriate and mother had not cancelled any. The minors were healthy and developmentally normal. The twins had no behavioral issues; however, A.U. continued to have some aggressive behaviors after visits with mother. A.U. was in weekly therapy, working on various issues including visit transitions. The minors continued to do well in the relative placement, and the paternal great-great-aunt had begun the adoption home study process.

At the contested section 366.26 hearing, the father addressed the court, expressing confusion about the proceedings and his desire to reunify with the minors when released from custody. Mother's counsel suggested there was a parent-child exception to termination of her parental rights but presented no evidence on that point, relying instead on the reports and history of the case. The court found the minors were likely to be adopted, noting that while A.U. had some aggressive behaviors, he was subject to redirection and was in therapy to deal with the issue. The court found there was some level of parent-child bond, but it did not rise to a level where the minors would be significantly harmed by termination of parental rights. The court noted A.U.'s need for permanence and stability, and observed the level of the relationship between mother and the minors was friendly but not necessarily parental. The court terminated parental rights, selecting adoption as the permanent plan.

4

# DISCUSSION

## I

Mother argues the juvenile court erred in denying her petitions for modification without a hearing. She further contends the juvenile court erroneously relied on section 366.21, subdivision (h) in denying her petitions.

### a. Prima facie showing

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[1] "The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence. [Citation.]" (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) Determination of a petition to modify is committed to the sound discretion of the juvenile court, and absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

---

[1] Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

To establish the right to an evidentiary hearing, the petition must include facts which make a prima facie showing that there is a change in circumstances and "the best interests of the child may be promoted by the proposed change of order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672; see *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see also *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; see also Cal. Rules of Court, rule 5.570(e)(1).) "The prima facie requirement is not met unless the facts alleged, if supported by evidence . . . , would sustain a favorable decision on the petition." (*In re Zachary G., supra*, 77 Cal.App.4th at p. 806.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

Mother's petitions alleged she was once again in drug treatment and had completed some elements of the program. She also alleged she was participating in job training. However, these achievements must be viewed in light of the juvenile court's findings and orders at the time mother's services were terminated. At that time, mother had not completed drug treatment and had twice been excluded from drug court, although by the hearing she had reengaged in the STARS program. Further, while mother had attended the required sessions of domestic violence counseling, she had not benefitted from the program and continued to maintain a relationship with father. Mother's petitions do not address this essential component of her service plan. At most, mother alleged changing, not changed, circumstances. Further, her petitions only sought renewed services, not return of the minors, and therefore if granted would delay permanency for the minors, who had already waited for more than a year for mother to

6

meaningfully engage in reunification. Mother failed to allege a prima facie case of changed circumstances and the juvenile court could properly deny the petitions on that ground alone.

Similarly, mother failed to allege that the minors' best interests would be promoted by the changed order since the petitions alleged only that she was now visiting regularly and consistently and was now actively participating in visits and increasing the parent-child bond. These allegations establish only that mother is now making efforts to have a parental relationship with the minors, not that their interests in permanence and stability would be furthered by the proposed modifications. The juvenile court did not abuse its discretion in denying mother's petitions summarily without a hearing.

**b.      Reliance on section 366.21, subdivision (h)**

Section 366.21, subdivision (h) states, in relevant part: "In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent . . . ."

It is true that the petitions did not specifically request that the section 366.26 hearing be vacated as part of the relief sought, and while that hearing is pending, no reunification services should be provided. However, California Rules of Court, rule 5.570(a) requires the court to liberally construe the petition in favor of its sufficiency. (See also *In re Mary G.* (2007) 151 Cal.App.4th 184, 205.) In this case, liberal construction would require the court to infer that, as part of the relief sought by the petitions, mother also would request that the section 366.26 hearing be vacated. Without such construction, the petitions are rendered meaningless due to a drafting oversight. The juvenile court should have liberally construed the petitions on this point in favor of their sufficiency. However, in light of the failure of the allegations to state a prima facie case for relief, the error is harmless.

7

## II

Mother argues that the juvenile court erred in failing to apply the parent-child beneficial relationship exception to termination of her parental rights.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; *In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1373; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother had no visits during the first five months of the dependency and visited only sporadically prior to termination of her reunification services. According to the review report, she did not interact significantly with the minors when she did visit. It was

8

only in the last four months, after services were terminated and before the section 366.26 hearing, that she began to visit regularly and actively engage in visits.  S.U. and Y.U. were infants when removed from mother's custody and had been in foster care more than 18 months.  Mother's visitation pattern was insufficient to establish a significant bond with these two minors and she was, at best, a friendly visitor to them.  A.U. was three years old at the beginning of the dependency and clearly had some attachment to mother.  However, contact with her destabilized him and triggered aggressive, defiant behaviors.  The evidence did not establish there was a positive emotional attachment between A.U. and mother.

All the minors, and particularly A.U., needed a permanent, stable home.  The strength and quality of the relationships between mother and the minors did not outweigh the minors' need for the benefit a safe, stable adoptive home would provide.  The juvenile court did not err in concluding mother failed to establish the beneficial parental relationship exception to termination.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                              RAYE            , P. J.



We concur:



          MAURO          , J.



          HOCH           , J.


9